**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, )<br><br>Plaintiff, )<br><br>v. )<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, )<br><br>Defendant. ) | Civil Action No. 17-cv-1395 (TSC) |

## MEMORANDUM OPINION

Plaintiff People for the Ethical Treatment of Animals (PETA) has sued under the

Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*, challenging certain responses to a

FOIA request it submitted to the National Institutes of Health (NIH), a component of Defendant

Department of Health and Human Services (HHS).  Before the court is HHS's Motion for

Summary Judgment.  (ECF No. 16, MSJ.)  For the following reasons, the court will grant in part

and deny in part HHS's motion.

## I.   BACKGROUND

### A.  PETA's FOIA Request

PETA requested:

> For the period covering May 1, 2014 to July 31, 2014, copies of all e-mails sent
> and/or received by Francis Collins and/or Kathy Hudson regarding maternal
> deprivation experiments conducted on rhesus macaques at the NIH's facility in
> Poolesville, Maryland.

(ECF. No. 16-1, Decl. of Garcia-Malene ¶ 4.)  PETA also requested that the search include documents located in Collins' and Hudson's Gmail accounts, as well as any other private e-mail accounts they used during the specified time period.  (*Id.*)

NIH's Office of the Executive Secretariat (Exec Sec) searched Collins' work email using three terms ("maternal deprivation", "Poolesville", and "rhesus macaque") and found no responsive documents.  (*Id.* ¶ 6.)  Exec Sec also searched the NIH Outlook repository using the same terms and found four items.  (*Id.* ¶ 7.)  Finally, Exec Sec searched Collins' personal Gmail account using 17 terms, including the three used in the other searches, and found an unspecified number of items.  (*Id.* ¶ 8.)  It sent all the search results to the NIH FOIA office for review, and that office found 42 pages responsive.  (*Id.* ¶ 9.)  NIH produced this material to PETA, with redactions under Exemptions 5 and 6 on 31 of the pages.  (*Id.*)

Hudson's assistant Kathy Abel searched Hudson's personal Gmail and NIH email accounts using six terms ("maternal deprivation", "Poolesville", "rhesus macaque", "monkeys", "Goodall", and "PETA") and located 200 pages, which Abel provided to the NIH FOIA Office for review.  (*Id.* ¶ 12.)  The FOIA Office found all 200 pages responsive, and on October 30, 2017 turned over 71 pages in full and 30 pages in part, withholding the remaining 99 in their entirety under Exemptions 5 and 6.  (*Id.* ¶¶13, 16.)

On February 8, 2018, HHS changed course and notified PETA that "after further review of the previously released records . . . [HHS has] concluded that 119 pages are not responsive to the request, and we have therefore pulled these pages from the group that remain contested in the litigation from which the request stems."  (*Id.* ¶ 14.)  HHS then filed its motion for summary judgment.

## II.    LEGAL STANDARDS

### A.  <u>Summary Judgment</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A court may enter summary judgment on a "claim or defense . . . or [a] part of each claim or defense."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "material" only when it involves facts "that might affect the outcome of the suit under the governing law."  *Id.* at 248. "[F]actual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Liberty Lobby*, 477 U.S. at 248).  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  The nonmoving party's opposition must be supported by affidavits,

declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

## B. **FOIA**

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). Federal agencies must comply with FOIA requests to make their records available to the public unless the requested "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

Agencies have "an obligation under FOIA to conduct an adequate search for responsive records," *Edelman v. S.E.C.*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016), and "[a]n inadequate search for records constitutes an improper withholding" under the statute. *Schoenman v. F.B.I.*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). When a FOIA requester challenges an agency's response, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The court employs a reasonableness test to determine whether an agency's search for responsive materials is adequate. *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). However, "evidence that

relevant records have not been released may shed light on whether the agency's search was indeed inadequate." *Weisberg*, 705 F.2d at 1351.

"An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits [or declarations] describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 472 F.3d 312, 318 (D.C. Cir. 2006) (alteration in original). The court must accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). However, "it is well-established that a conclusory affidavit that gives 'no detail as to the scope of the examination . . . is insufficient as a matter of law' in demonstrating the adequacy of the search." *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87 (D.D.C. 2007) (quoting *Weisberg v. U.S. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980)).

The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of showing that the responsive material withheld falls within a stated exemption, *see Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and its "justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 261 (D.D.C. 2014) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). Summary judgment for the agency is only appropriate when it proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

### III.   ANALYSIS

While "a motion for summary judgment cannot be 'conceded' for want of opposition,"

*Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), "[t]his does not mean

. . . that the Court must assess the legal sufficiency of each and every [claim] invoked by the

government in a FOIA case." *Shapiro v. United States Dep't of Justice*, 239 F. Supp. 3d 100,

106 n.1 (D.D.C. 2017).  In *Shapiro*, the court held:

> Where the FOIA requester responds to the government's motion for summary
> judgment without taking issue with the government's decision to withhold or to
> redact documents, the Court can reasonably infer that the FOIA requester does not
> seek those specific records or information and that, as to those records or
> information, there is no case or controversy sufficient to sustain the Court's
> jurisdiction.

*Id; see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Accordingly, the court will

address only the arguments PETA proffered in response to HHS's motion for summary

judgment.

### A.   <u>Vaughn Index</u>

PETA argues that NIH's *Vaughn* index is insufficient because it does not address the 123

pages that NIH eventually deemed non-responsive.  (ECF No. 20, Opp. at 7–9.)  But non-

responsive records are not subject to FOIA's disclosure requirements, and thus the *Vaughn* index

need not include an explanation of their absence.  *See Competitive Enter. Inst. v. EPA*, 12 F.

Supp. 3d 100, 114 (D.D.C. 2014) ("Documents that are 'non-responsive' to a FOIA request . . .

are simply not subject to the statute's disclosure requirements.")  And while it is unusual for an

agency to change its findings about responsiveness the day before filing a motion for summary

judgment, there appears to be no authority—and PETA cites none—indicating that such action is

prohibited or presumptively suspect.  Moreover, NIH filed a supplemental declaration explaining

its decision to classify the records as non-responsive.  (ECF No. 23-1, Weiser Decl. ¶¶ 5–10.)

6

The fact that PETA disagrees with NIH's classification is not enough to undermine the presumption of good faith accorded to agency declarations. *See SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

### B.     <u>Search</u>

PETA argues that NIH has failed to adequately explain the basis for using "different search terms when looking through the personal and government emails of Hudson and Collins." (Opp. at 25.)  NIH used the same three terms for all searches ("maternal deprivation", "Poolesville", and "rhesus macaques") and used additional terms for three of the four searches. (*See* Garcia-Malene Decl. ¶¶ 6–8, 12.)  NIH explains that the searches were conducted by different individuals, and the additional terms were added "out of an abundance of caution."  (*Id.* ¶ 8.)

That explanation is sufficient to support the adequacy of NIH's search.  Though not without limits, "a federal agency has discretion in crafting a list of search terms," and as long as the "search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (internal quotation marks omitted) (citing, inter alia, *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  Here, the three core terms used for all the searches were themselves adequate, and NIH cannot be faulted for augmenting those search terms for some of the searches.

In addition, "the fact that different offices used different search terms" does not "undermine the reasonableness" of a search. *Judicial Watch, Inc. v. United States Dep't of State*, 2017 U.S. Dist. LEXIS 143665, *23 (D.D.C. Sept. 6, 2017); *see also Am. Fed'n of Gov't Emps., Local 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 151 (D.D.C. 2010) ("Plaintiffs'

argument that the search was inadequate because different officials used different terms when searching their own files is also unpersuasive."); *Judicial Watch*, 177 F. Supp. 3d at 458 (rejecting challenge to search based on inconsistent search terms where the "different searches were conducted by different custodians" and where the plaintiff did "not otherwise object to the search terms")*; Liberation Newspaper v. United States Department of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015)("Although the defendant used different search terms for different databases, this discrepancy does not undermine the conclusion that the search was reasonable given that the search terms were used after consultation with employees familiar with the databases and were reasonably designed to yield responsive information.")

PETA cites *Tushnet v. U.S. Immigration & Customs Enf't*, 246 F. Supp. 3d 422 (D.D.C. 2017) for support, but that case is inapposite because it involved search terms that differed from search to search.  (Opp. at 25.)  Here, NIH used the same core terms throughout, and chose to augment them for certain searches.  This case is also distinguishable from *James Madison Project v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017), which involved more variation, including in the date ranges used and the data sets searched.

Because NIH's search was adequate, and because the use of additional search terms does not undermine that adequacy, summary judgment will be granted for HHS as to the search.

C.    **Exemption 6**

Exemption 6 protects "personnel and medical files and similar files" when disclosure of such files "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly to cover "[a]ll information which applies to a particular individual . . ., regardless of the type of file in which it is contained." *Milton v. United States Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting

*Washington Post Co. v. United States Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982)). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton*, 783 F. Supp. 2d at 58 (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). PETA does not dispute that the material withheld under Exemption 6 satisfies this threshold requirement.

Once the threshold requirement is met, the court must conduct a balancing test to determine whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1301 (D.C. Cir. 1991). This involves weighing the individual privacy interests in the requested information against the public interest in disclosure. *Id.* at 1302. "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of *the operations or activities of the government*." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal quotation marks and citations omitted) (emphasis in original); *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) ("[U]nless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.") (internal quotation marks and citation omitted).

Under Exemption 6, NIH withheld "personal email addresses, URLs at the bottom of personal emails which would reveal information about the private email account, personal travel plans, the identity of unpaid outside consultants, and personal details that would identify them." (Garcia-Malene Decl. ¶ 20.) NIH claims that "[i]n each instance where information was

withheld, the individual had a significant privacy interest in the information being withheld pursuant to Exemption 6." (*Id*. ¶ 21.)  PETA argues that this description is insufficient, and that the privacy interest is "obviously nonexistent or *de minimis.*"  (Opp. at 16.)

PETA's argument is in part based on its assertion that much of the redacted information is publicly available, thus reducing the privacy interest.  But while public access may reduce the privacy interest, it does not eliminate it.  The fact that information "is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 770 (1989); *see also*, *Judicial Watch, Inc. v. Dep't of Justice,* 365 F.3d 1108, 1126 (D.C. Cir. 2004) ("Even though some of this information has previously been disclosed to the public, . . . the information is nevertheless entitled to protection"); *Taylor v. Dep't of Justice*, 268 F. Supp. 2d 34, 38 (D.D.C. 2003) ("The fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed."); *Schoenman v. FBI*, 573 F. Supp. 2d 119, 149 (D.D.C. 2008) ("[E]ven if Plaintiff is correct that he can guess the individual's identity, the fact that Plaintiff may deduce the identities of individuals through other means . . . does *not* diminish their privacy interests.") (emphasis in original) (internal quotations omitted).

PETA argues that NIH has not provided enough information for the court to determine whether the redacted URLs "contain personally identifying information or whether they contain random strings of alphanumeric characters."  (Opp. at 15.)  In a supplemental declaration, however, NIH explains that it "withheld the URLs out of a concern that someone potentially could use the URLs to access the emails to which they correspond or even the entire email

accounts in which those emails are contained." (ECF No. 23 at 14 (citing Weiser Decl. ¶ 15).) That description is adequate to show that the URLs contain personally identifying information, and that their disclosure implicates a privacy interest.

Moreover, PETA fails to proffer the public interest in disclosing the excluded material, save a general assertion that there is popular interest in the maternal deprivation experiments. (Opp. at 16.) "A FOIA requester bears the burden of identifying an overriding public interest and demonstrating that disclosure would further that interest," *Milton*, 783 F. Supp. 2d at 58, and a requester must "'adequately support[] its 'public interest' claim with respect to the specific information being withheld." *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 351 (D.C. Cir. 2017).

PETA has not met its burden of showing a public interest in disclosing the material withheld under Exemption 6, and, having engaged in balancing the private and public interests, the court concludes that releasing this information would constitute a clearly unwarranted violation of privacy, and will therefore grant summary judgment for HHS as to the Exemption 6 withholdings.

### D.   <u>Exemption 5</u>

Exemption 5 shields documents that would "normally [be] privileged from discovery in civil litigation against the agency," including documents protected by the deliberative process privilege. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To withhold a document under Exemption 5, the "document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. U.S.*, 534 F.3d 728, 733 (D.C. Cir. 2008) (citations and internal quotation marks omitted). There

is no dispute that the first condition is met here; the parties' dispute centers on the second condition.

The deliberative process privilege protects materials that are "predecisional" and "deliberative." *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C. Cir. 1993). NIH invokes the privilege for "email communications involving the Director and Deputy Director of NIH and outside consultants." (MSJ at 13.) It argues that the communications are pre-decisional and deliberative because they involve discussions about how to respond to PETA's opposition to the maternal deprivation experiments. (Garcia-Malene Decl. ¶¶ 18–19.)

PETA argues that NIH has not identified the deliberative process involved or the harm that would result if it released the material. (Opp. at 12.) PETA also argues that "determining how to respond to a PETA campaign is simply not the sort of agency policy making covered by Exemption 5." (*Id.* at 12 n.4)

While it is a close case, PETA has the better argument. The inherent tension within the deliberative process privilege is that most government activity can be characterized as predecisional and deliberative. But because "Exemption 5 is to be construed as narrowly as consistent with efficient Government operation" the court must draw some boundaries. *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal quotations omitted.) In this case, the disputed emails fall outside those boundaries.

It is true that the deliberative process privilege is not limited to the formation of a specific policy, but, to be protected by the privilege, "materials must bear on the formulation or exercise of agency policy-oriented judgment . . ." *Id.* at 1434. "[W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable." *Id; see also Gold Anti-Trust Action*

*Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) ("even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.").

The withheld information in this case consists of

recommendations on steps to take and options to consider in response to a video presented by PETA to NIH officials relating to maternal deprivation experiments conducted on rhesus macaques at an NIH facility, PETA's stated intention to start an opposition campaign featuring the video, and PETA's request to meet with NIH Director Collins prior to launching their opposition campaign.

(Garcia-Malene Decl. ¶¶ 18–19.)  Though these communications may be important, they do not constitute "the process by which policy is formulated," nor could they "reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment." *Petroleum Info. Corp.,* 976 F.2d at 1434.

HHS notes, correctly, that while the D.C. Circuit has not addressed the issue, multiple courts in this District have found the deliberative process privilege applicable to agency responses to press inquiries, news articles, and Congressional inquiries. *See, e.g., Gellman v. Dep't of Homeland Security*, 2020 WL 1323896 at *12 (D.D.C. Mar. 20, 2020) ("the overwhelming consensus among courts in this District is that discussions about how to respond to the press are protected by this privilege") (internal quotations omitted); *American Center for Law & Justice v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 302 (D.D.C. 2018) ("the deliberative process privilege applies to documents generated in the crafting of an agency's public statements"); *Comm. on Oversight & Gov't Reform, U.S. House of Rep. v. Lynch*, 156 F. Supp. 3d 101, 111–12 (D.D.C. 2016) (privilege covers deliberations about how to respond to press inquiries regarding a law enforcement initiative).

But while the deliberative process privilege may apply to responses to press inquiries and Congressional inquiries, HHS cites to no case in this District, and the court is aware of none, holding that the privilege applies to responses to inquiries from non-profits.  There are similarities between an agency's response to a press inquiry and an agency's response to a non-profit, but applying the privilege here, to a non-profit's request for a meeting, would certainly expand the scope of Exemption 5.  If the privilege protected the process of responding to such a request, there would be no limiting principle preventing expansion of the privilege to protect the preparation of all agency communication with outside entities.  The court declines to initiate such an expansion because HHS bears the burden of establishing the privilege by a reasonable certainty, and because Exemption 5 is to be construed "as narrowly as consistent with efficient Government operation."  *Petroleum Info. Corp.*, 976 F.2d at 1434 (D.C. Cir. 1992).  Accordingly, HHS' motion for summary judgment will be denied as to the material withheld under Exemption 5, and NIH must provide the material to PETA.[1]

### E.      Segregability

Because this holding obligates NIH to produce additional documents, the court need not consider at this juncture PETA's claim that NIH failed to release all reasonably segregable, non-exempt information.

---

[1] The fact that PETA has not filed a motion for summary judgment does not prevent the court from ordering release of these records, because the ultimate burden remains on the agency.  *See, e.g., Ctr. for the Study of Servs. v. U.S. Dep't of Health and Human Servs.*, No. 14-498, 2016 WL 6835461, at *5 (D.D.C. Aug. 16, 2016) ("While there usually are cross-motions in FOIA litigation, there is no legal reason to require them"), *rev'd on other grounds*, 874 F.3d 287 (D.C. Cir. 2017); *Watkins v. A.T.F.*, No. 04-800 (GK), 2005 WL 913286, at *3 (D.D.C. Apr. 18, 2005) (ordering release of data without cross-motion for summary judgment from FOIA requesters), *vacated in part on other grounds*, 2005 WL 2334277 (D.D.C. Sept. 1, 2005).

## IV.    CONCLUSION

For the foregoing reasons, HHS's motion for summary judgment will be granted in part and denied in part.  A corresponding Order will follow shortly.


Date:  June 1, 2020


                                        *Tanya S. Chutkan*
                                        TANYA S. CHUTKAN
                                        United States District Judge